STATE OF LOUISIANA v. MENEFEE MOTOR CO., INC.

(January 11, 1932. Opinion and Decree.)
(February 15, 1932. Rehearing Refused.)
(February 29, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Charles J. Rivet, of New Orleans, attorney for plaintiff, appellee.

J. L. Warren Woodville, of New Orleans, attorney for defendant, appellant.

JANVIER, J. The state tax collector for the city of New Orleans seeks to recover from Menefee Motor Company, Inc., additional license taxes for the years 1930 and 1931.

Defendant is a retail dealer engaged in the sale of automobiles.

Under section 8 of Act No. 205 of 1924 it is required of retail dealers that they pay a license tax predicated upon annual gross sales.

For each of the two years in question defendant paid a license tax of $360, which is the amount due under the act from a retail dealer whose gross sales exceed $500,-000, but are less than $600,000.

Defendant admits that its gross "receipts" for the years involved were as stated in the rule fixed by the tax collector, but contends that, since there are included in those gross "receipts" certain amounts which it, defendant, paid for freight for transporting the automobiles sold from the factory, in which they were made, to New Orleans, where they were delivered to customers, those freight moneys should be deducted from the gross "re-

ceipts" in order to ascertain what amount correctly represents gross sales.

The agreed statement of fact on which this rule was submitted shows:

"That, in selling cars to its customers, the defendant adds a profit fixed by the manufacturer to the f. o. b. price, and also divides the freight charged by the manufacturer and paid by the defendant company so as to prorate it equally to each car and adds said proration to the customer's bill."

It is argued that, thus, in the case of each sale, the amount paid by the customer includes freight money, in which defendant is in no way interested, but which it merely collects from the customer to reimburse it for the amount already remitted to the manufacturer.

The contention is ingenious, but, if sound, would enable all dealers who sell in one city goods manufactured in another, or who transport from one point in one city to another point in the same city goods for sale, to deduct for license tax purposes the freight or transportation charges and thus reduce the amount on which is based the license tax.

Why could not a grocer who receives a carload of flour apportion to each barrel or to each sack of flour its pro rata of the, total freight, and then, for the purpose of determining his·gross sales for license tax purposes, deduct the entire freight paid? Why could not every retail dealer adopt the same method?

That defendant sets up on its books a special account, in which it keeps a record of the freight paid and balances the amount paid to the manufacturer by the amounts paid by the customers, is merely a convenient method of bookkeeping, and cannot be permitted to interfere with the legal situation which actually exists where a retailer sells to a customer an article for a gross price, which gross price is made up of many component parts, such as amount paid to manufacturer, pro rata of salary of clerks, pro rata of rent, etc. Why should the retailer not deduct the salaries of his clerks and the rent of his building, as well as the freight paid? All go to make up the price which must be charged the purchaser.

When the legislature based license taxes due by retailers on gross sales, it evidenced an intention to adopt, as the basis for the tax, the total amount paid by the purchasers, without considering the component parts making up the total sale price and without deducting therefrom any of those items.

If the freight paid by the customer should not be included as a part of the gross sale price, but should merely be considered as the return by the customer of an advance made to the manufacturer, then it would follow that the retailer's vendor's lien to secure payment of the purchase price should not include that freight money. Yet, we venture the suggestion that every automobile dealer, in the event of non-payment by a customer, would be prompt to assert his vendor's lien for the whole sale price, including the freight money.

We realize that it is quite customary for automobile manufacturers and dealers to advertise the prices of their cars as though they were to be delivered to the customers at the factory, or, as it is known to shippers, "f. o. b. factory," but this is merely a convenient method by which manufacturers may publish in nation-wide periodicals, prices of automobiles which are applicable in all localities. Each purchaser

knows that when he buys a car the price is based on delivery at factory, but that freight and other charges are added in making up the price, which he pays, but this does not mean that he accepts delivery at the factory because, to so construe his contract would be to place on him the risk of transportation, in which risk, it is conceded, the purchaser is in no way interested. It is true that, according to the agreed statement of fact, the bill which is sent to the purchaser of each automobile is made up of various items and that among those items is found a charge for freight, but this is done merely that the customer may see how the price to him is arrived at, and cannot have the effect of authorizing courts to hold that the freight is not a part of the purchase price.

Defendant in truth and in fact sells automobiles delivered in New Orleans and it cannot deliver them in New Orleans unless it has paid the freight. When it pays the freight it must add the amount of the freight to the price, and it cannot be heard to contend that it paid the freight for the customer's account, or that it collected the freight from the customer merely to remit it to the factory. That included in the bill is usually the cost of an automobile license does not change the situation. That item is plainly the result of the request of the purchaser of the car that the dealer obtain from the state the necessary license plates, but the purchase by the dealer of license plates bears no analogy to the freight charge paid by the dealer prior to the sale to the customer.

We conclude that the additional license claimed is due.

In the district court judgment was rendered in accordance with the views which we have expressed; that is to say, to the effect that, in computing gross sales, the license taxpayer should not deduct the amounts paid as freight on the articles transported from point of manufacture to point of sale, but His Honor below was of the opinion that, since, in making the said deductions, the license taxpayer had acted in good faith and upon a letter which had been issued from the office of the former attorney for the state license tax collector, the interest and attorney's fees contended for should not be allowed.

· We find in the record an answer to the appeal, in which answer the interest and attorneys' fees are prayed for.

According to the agreed statement of fact, in basing its license tax payment on the sales only after deducting freight payments, defendant acted upon the faith of a letter marked "Defendant-5" received by it. That letter was dated February 12, 1930, purports to bear the signature of the former attorney for the state tax collector in license matters, and advises defendant that "deductions for freight * * * were allowable."

Counsel for defendant now concedes that, if his contention that the freights are deductible is not legally sound, then, so far as the additional license itself is concerned, his client is not protected by the said letter, but he contends that, inasmuch as his client acted in good faith in making the said deductions, and was led into that action by the letter referred to, the interest and attorney's fees should not be assessed. It is difficult to understand the theory under which it is argued that the estoppel, which is contended for against the state, applies to the principal, but not to the interest and attorney's fees. However, whatever the theory may be, since the enactment of Act No. 148 of

1906, we are unable to see how the writing of such a letter, even if it be conceded that the letter was written by the attorney himself, can form the basis of an estoppel against the state. In section 1 of that act it is provided:

"That no action or inaction of the state, a municipality, town or parish of this state, shall stop, or prescribe, or debar its right to proceed for licenses or additional licenses before the day of prescription shall begin."

Various cases cited by defendant and relied on as establishing the right of defendants similarly situated to rely on an estoppel against the state either have no application, or were decided prior to the enactment of the Act of 1906. It necessarily follows that, even if the letter referred to was signed by the attorney himself, it would have no effect, since his duties do not include the right to waive any license tax legally due. He cannot substitute his opinion for the decision of the courts. He has no prerogative but to proceed for the collection of licenses, and he may not, on his own initiative, interpret license statutes in such a way as to waive or abandon the rights of the state. Not only is the additional license tax due, but, also, defendant must pay interest at 2 per cent from the 1st day of March of each respective year, as well as attorney's fees at 10 per cent on the whole amount due.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is amended so as to include 2 per cent per month interest from March 1, 1930, on $290, and 2 per cent per month interest from March 1, 1931, on $140, together with attorney's fees at 10 per cent on the whole amount due, and, as thus amended, the judgment is affirmed.