(No. 22968.)

THE GEE COAL COMPANY, Appellee, *vs.* THE DEPARTMENT OF FINANCE OF THE STATE OF ILLINOIS, Appellant.

*Opinion filed June 14, 1935—Rehearing denied October 9, 1935.*

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, and WILLIAM C. CLAUSEN, of counsel,) for appellant.

RUBENSTEIN, HAGGENJOS & MONARCH, (N. W. RUBENSTEIN, and ALEXANDER J. RESA, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The State Department of Finance appealed to this court from a final order entered by the superior court of Cook county sustaining a motion by the Gee Coal Company, appellee, to quash the record and proceedings had before the department wherein it found, after a hearing, that appellee was liable to the State for a tax under the Retailers' Occupation Tax act. The amount of liability fixed ($135.41) represented a deficiency for the months of November and December, 1933. The superior court by the same order

overruled a motion by appellant to quash appellee's writ of *certiorari.*

Appellee conducts a retail coal business in Chicago. It buys coal f. o. b. the mines and ships it by rail to its yard in Chicago. It pays the mining company for the coal and the railroads their freight charges. It then sells coal to consumers. Before the Retailers' Occupation Tax act was passed, and up to November, 1933, its billing was at a single charge per ton, but beginning with November, 1933, it separated the charge per ton into an item for the coal and another item for freight in billing its customers. This latter item represented the freight charged appellee per ton for transporting the coal from the mine to its Chicago yard.

Appellee contends that under the terms of the act it properly excluded from the amount of its gross receipts, in computing its tax, amounts paid it by customers to reimburse it for such freight charges. If this contention is sound the ruling of the superior court is correct. If, on the other hand, appellant's contention is correct that such freight charges are a part of the sale price of the coal although made a separate item in billing customers, that ruling was erroneous and the judgment of the trial court should be reversed.

Both appellant and appellee agree that the question presented is one of law and that it is to be determined from the statute. It is therefore unnecessary to set out Rule 25 of the appellant department, which purported to deal with freight charges.

Section 1 of the Retailers' Occupation Tax act (Smith's Stat. 1933, chap. 120, par. 440; Cahill's Stat. 1933, chap. 120, par. 426;) defines selling price as follows: " 'Selling price' or the 'amount of a sale' means the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, service and property of every kind or nature and shall be determined, without any deduction on account of the cost of the property sold,

the cost of materials used, labor or service cost, or any other expense whatsoever." The words "labor or service cost, or any other expense whatsoever," are all-embracing in their scope. Their plain meaning is, that when a transfer of personal property is made within the Retailers' Occupation Tax act no such deduction as that which appellee seeks to make in the case before us shall be made. We need not speculate upon or decide what would be the case if title to the coal passed under different circumstances or at a different point before it had been shipped from the mine to appellee's yard in Chicago. The question before us is whether the charges paid by appellee for freight on coal shipped from the mine to its Chicago yard constitute a part of the selling price to its customers. The answer must be in the affirmative.

In *State* v. *Menefee Motor Co.* 139 So. (La.) 61, a similar question was before the Court of Appeals of Louisiana for consideration. The State tax collector for the city of New Orleans was seeking to recover from the defendant additional occupational license taxes for the years 1930 and 1931. The motor company contended that freight paid by it for transporting automobiles from the factory to New Orleans should be deducted from its gross receipts to determine what was the correct amount of its gross sales. In holding that such freight charges could not be deducted from the sale price the court said: "That defendant sets up on its books a special account, in which it keeps a record of the freight paid and balances the amount paid to the manufacturer by the amounts paid by the customers, is merely a convenient method of book-keeping, and cannot be permitted to interfere with the legal situation which actually exists where a retailer sells to a customer an article for a gross price, which gross price is made up of many component parts, such as amount paid to manufacturer, *pro rata* of salary of clerks, *pro rata* of rent, etc. Why should the retailer not deduct the salaries of his clerks and

the rent of his building as well as the freight paid? All go to make up the price which must be charged the purchaser. When the legislature based license taxes due by retailers on gross sales, it evidenced an intention to adopt, as the basis for the tax, the total amount paid by the purchasers, without considering the component parts making up the total sale price and without deducting therefrom any of those items."

The deficiency assessment made by the Department of Finance against the Gee Coal Company for the months of November and December, 1933, was correct. The order and judgment of the superior court of Cook county are therefore reversed and the cause is remanded, with directions to that court to quash the writ of *certiorari* issued in this cause and to dismiss said cause in accordance with the motion of appellant.

*Reversed and remanded, with directions.*