COLONIAL PIPELINE COMPANY v. I. L. CLAYTON, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 10

(Filed 9 April 1969)

**1. Taxation §§ 9, 31— sales tax — interstate transaction**

A sales tax on interstate transactions violates the commerce clause of the Federal Constitution and is therefore void and uncollectible.

**2. Taxation §§ 9, 15— sales tax — use tax — interstate commerce**

A sales tax is a tax on the freedom of purchase and, when applied to interstate transactions, it is a tax on the privilege of doing interstate business, creates a burden on interstate commerce and violates the commerce clause of the Federal Constitution; conversely, a use tax is a tax on the enjoyment of that which was purchased after a sale has spent its interstate character.

**3. Taxation §§ 9, 15, 31— use tax — interstate commerce**

A use tax does not discriminate against interstate commerce since it is laid upon every purchaser, within the state, of goods for consumption, regardless of whether they have been transported in interstate commerce.

**4. Taxation §§ 15, 31— use tax — constitutionality**

The constitutionality of a use tax has long been established.

**5. Taxation §§ 15, 31— purpose of use tax**

The purpose of the use tax is to impose the same burdens on out-of-state purchases as the sales tax imposes on purchases within the state.

**6. Taxation §§ 15, 31— sales tax — use tax**

A sales tax is assessed on the purchase price of property and is imposed at the time of sale; a use tax is assessed on the storage, use or consumption of property and takes effect only after such use begins.

**7. Taxation §§ 15, 31— use tax — taxable event**

Regardless of the time and place of passing title, the taxable event for assessment of the use tax occurs when possession of the property is transferred to the purchaser within the taxing state for storage, use or consumption.

**8. Taxation §§ 15, 31— use tax — transportation charges**

Since the taxable event for assessment of the use tax occurs after purchase and after transportation into the taxing state for storage, use or consumption, the state is at liberty to include transportation charges in the use tax base and has done so by enactment of G.S. 105-164.12.

**9. Taxation §§ 15, 31— sales tax — taxable event**

The taxable event for assessment of the sales tax occurs at the time of sale and purchase within the state. G.S. 105-164.4(1).

**10. Taxation §§ 15, 31— sales tax — transportation charges**

The retail price upon which the sales tax is paid by the purchaser necessarily takes into account the transportation charges that have been paid on the goods to bring them to the retail outlet in North Carolina where the sale takes place.

**11. Taxation §§ 15, 31— sales tax — use tax — transportation charges**

The net effect of including interstate transportation charges in the use tax base and excluding intrastate transportation charges from the sales tax base is to equalize the burden of the tax on property sold locally and property purchased out of state.

**12. Taxation §§ 9, 15, 31— use tax on transportation charges — constitutionality**

Statute providing for the inclusion in the use tax base of transportation charges paid by a purchaser for transporting tangible personal property from the point of purchase outside North Carolina to a point of use within this State when the purchaser takes title to the purchased property at the point of origin outside the State does not place a discriminatory burden on interstate commerce and is constitutional. G.S. 105-164.12.

**13. Statutes § 5— construction of statutes**

Where the language of a statute is clear and unambiguous, its plain and definite meaning controls and judicial construction is not necessary; if the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent.

**14. Taxation § 23— construction of tax statute**

Where the meaning of a tax statute is doubtful, it should be construed against the state and in favor of the taxpayer unless a contrary legislative intent appears.

**15. Taxation §§ 15, 31— use tax — cash discounts**

Prior to July 1, 1967, the effective date of the amendment to G.S. 105-164.3(4) by 1967 Session Laws, ch. 1110, § 6, cash discounts allowed a purchaser for payment within a specified time were not properly included in the use tax base.

**16. Statutes § 5— administrative interpretation**

Where there is a conflict between the interpretation of an administrative agency and that of the courts, the latter will prevail.

**17. Taxation § 23— construction of amendment to tax statute**

In case of an isolated, independent amendment to the tax law, the presumption is fairly strong that a change in substance, not a clarification, was intended.

**18. Limitation of Actions § 2— applicability to sovereign**

The statute of limitations set forth in G.S. 105-241.1(e) runs against the sovereign since it is expressly named therein.

**19. Taxation § 31—    underpayment of use taxes — statute of limitations**

Where taxpayer filed timely use tax returns and remitted the amounts covered by the returns, G.S. 105-241.1(e) bars an action by the Commissioner of Revenue for underpayment of use taxes which accrued more than three years prior to the date that notice of assessment for underpayment of use taxes was furnished to the taxpayer.

PLAINTIFF appealed to the Court of Appeals from judgment of *Hobgood, J.,* at the September 1968 Non-Jury Civil Assigned Session, Superior Court of WAKE County. Thereafter, plaintiff petitioned that the case be certified for transfer to the Supreme Court before determination by the Court of Appeals. We allowed the petition pursuant to the provisions of G.S. 7A-31.

Plaintiff conceded at the trial, following an audit and after certain adjustments, that no relief was due it upon its original complaint. Defendant asserted a counterclaim based on the audit, and the contest is now confined solely to defendant's right to recover thereon. The facts, most of which have been stipulated, may be summarized as follows:

1.  Plaintiff is a Delaware corporation with its principal office in Atlanta, Georgia. It is engaged in the business of interstate transportation of petroleum products by pipeline.

2.  Defendant is the Commissioner of Revenue of the State of North Carolina.

3.  During October, November and December of 1962 and April and May of 1963, plaintiff purchased large quantities of steel pipe to be used in the construction of a petroleum products pipeline in the State of North Carolina.

4.  The purchases of steel pipe were made in states other than North Carolina, and, under the terms of purchase, title to said pipe passed to plaintiff at points of origin outside North Carolina. The costs of transporting said pipe into North Carolina were paid by plaintiff. The suppliers billed plaintiff for the full amount of the sales price but allowed a discount therefrom only in case plaintiff paid for the merchandise within a specified period of time. In many instances, plaintiff availed itself of this discount by paying the bills within the specified time.

5.  Plaintiff filed timely use tax reports for the months of October 1962 through May 1963 and made timely use tax payments to the State of North Carolina for said months as follows:

| Month Reported | Report Date | Total Tax Paid |
|---|---|---|
| October 1962 | 11-12-62 | $41,145.24 |
| November 1962 | 12-11-62 | 69,155.67 |
| December 1962 | 1-14-63 | 7,093.45 |
| April 1963 | 5-14-63 | 76,191.91 |
| May 1963 | 6-12-63 | 66,181.56 |

6. On or about November 14, 1965, plaintiff applied to defendant for a refund of the following amounts of tax paid on transportation charges during the months indicated:

| Month Reported | Date Tax Payment Due | Use Tax Paid on Transportation Charges |
|---|---|---|
| October 1962 | November 15, 1962 | $ 2,355.28 |
| November 1962 | December 15, 1962 | 3,695.91 |
| December 1962 | January 15, 1963 | 138.61 |
| April 1963 | May 15, 1963 | 3,070.62 |
| May 1963 | June 15, 1963 | 3,765.89 |

7. On or about April 7, 1966, the defendant, after hearing, denied said application for refund. Plaintiff thereupon instituted this action to recover the use tax paid on transportation charges.

8. Defendant conducted an audit of plaintiff's records whereby it was determined that plaintiff had underpaid its sales and use tax to the State during the period of October 1962 through May 1966. Plaintiff was furnished a copy of the audit and agreed that certain amounts were due and payable and thereupon paid the additional sum of $26,934.53 as sales and use tax incurred during that period. This left an unpaid balance on the claim of the State in the amount of $28,503.33, representing the State's asserted use tax on transportation charges and cash discounts for said period. Defendant amended his answer to allege a counterclaim for this amount, and plaintiff abandoned its original claim.

9. On November 16, 1966, following the audit of plaintiff's books, defendant sent plaintiff the following notice:

"NOTICE OF SALES and/or USE TAX ASSESSMENT

TAXPAYER:                              DATE   NOVEMBER 16   1966
                                       PERIOD 10 1    62/5  31  66

COLONIAL PIPELINE CO FILE NUMBER 901 9 101 6102
3390 PEACHTREE ROAD NE COUNTY   FOREIGN
ATLANTA   GA

TYPE OF ASSESSMENT:

AS PER AUDIT COPY FURNISHED TAXPAYER

11 10 66   BY MESSRS F A LOVE   D O WILLIAMSON & B C
     MCLAMB

| | |
|---|---|
| TAX DUE | $488,786.44 |
| LESS TAX PREVIOUSLY PAID | $434,110.92 |
| BALANCE TAX DUE | $ 54,675.52S |
| PLUS PENALTY | $  5,746.16 |
| PLUS INTEREST | $ 11,223.32 |
| TOTAL TAX, PENALTY & INTEREST DUE | $ 71,645.00S |
| LESS PAYMENT ON COMPLETION OF AUDIT | $ ................. |
| BALANCE DUE | $ 71,645.00* |
| | ................... |

AUDIT ADJ TO CORRECT ERROR FOR MAY 1966

You are hereby notified that an assessment for sales/or use tax, plus penalty and interest is proposed to be made against you in the amount indicated above.

This assessment is proposed pursuant to G.S. 105-241.1. If you desire a hearing before the Commissioner of Revenue on this assessment, the request for such hearing must be submitted in writing to the Director of the Sales and Use Tax Division within 30 days after the date on which this notice was mailed or, if served upon you by a representative of the Commissioner of Revenue, within 30 days after the date of such personal service. The application for hearing MUST BE MADE IN WRITING and must set forth in detail the bases for your objections to the assessment. Unless such application for hearing is filed within the time stated, this proposed assessment shall become final and conclusive."

The audit on which this notice of assessment was based was amended January 9, 1967, to indicate that the balance due for said period was $63,014.32, and a copy of the amended audit was furnished plaintiff on that date. Defendant waived the penalties previously

asserted and plaintiff paid the adjusted assessment except the portion based on transportation charges and cash discounts.

10. Defendant asserts in his counterclaim that $21,609.69 is due as use tax on transportation charges and $6,893.64 is due as use tax on cash discounts, a total of $28,503.33. These sums constitute the full net amount now at issue in this case exclusive of interest. The total figure is not in dispute, but plaintiff contends the entire amount is illegal and uncollectible.

11. Plaintiff and defendant have stipulated that if the transportation charges and cash discounts are properly includable in the North Carolina use tax base, then plaintiff has underpaid its use tax liability to the State for the period October 1, 1962, through May 31, 1966, by the sum of $28,503.33; in which case, defendant is entitled to recover that amount plus interest as provided by law, subject only to such adjustments, if any, as may be required by any applicable statute of limitations. If such transportation charges and cash discounts are not properly includable in the North Carolina use tax base, then plaintiff has paid in full its use tax liability to the State for the period in question and defendant is not entitled to recover anything in this action.

Plaintiff contends (1) that imposition of the use tax on transportation charges places an unequal burden on interstate commerce and contravenes both the State and Federal Constitutions; (2) that imposition of the use tax on cash discounts is not authorized by G.S. 105-164.3(4); and (3) that more than three years elapsed after the date upon which a tax return was required by law to be filed and before an assessment was made and therefore that portion of the claim based on transactions prior to November 16, 1963, is barred by the three-year statute of limitations.

Jury trial was waived by both parties. The trial court heard oral testimony in addition to the stipulations, found facts and made conclusions of law. Judgment was thereupon entered decreeing that plaintiff's action be dismissed and that defendant Commissioner of Revenue have and recover of plaintiff the sum of $28,503.33 with interest thereon as provided by law and court costs. From this judgment plaintiff appealed.

*Jordan, Morris and Hoke by John R. Jordan, Jr.; Jack Vickery and Howard D. McCloud (Atlanta, Georgia), Attorneys for plaintiff appellant.*

*Robert Morgan, Attorney General, and Myron C. Banks, Assistant Attorney General, for the defendant appellee.*

HUSKINS, J.

The determinative questions involved in this action are primarily questions of law and may be stated as follows:

1. Are transportation charges paid by a purchaser for transporting tangible personal property from the point of purchase outside North Carolina to a point of use within this State properly includable in the North Carolina use tax base when the purchaser takes title to the purchased property at the point of origin outside the State, causes said property to be transported into the State and stores, uses or consumes said property so as to become liable for North Carolina use tax?

2. Are cash discounts properly includable in the North Carolina use tax base when the seller bills the purchaser for the full amount of the sales price but allows a cash discount when goods are paid for within a specified period of time, and the purchaser takes the discount by paying for the goods within the time specified and uses, stores, or consumes the property in this State so as to become liable for the North Carolina use tax?

3. Is any portion of defendant's counterclaim barred by any applicable statute of limitations?

The statute which imposes a sales and use tax on transportation charges reads as follows: "Freight delivery, or other like transportation charges connected with the sale of tangible personal property are subject to the sales and use tax if title to the tangible personal property being transported passes to the purchaser at the destination point. Where title to the tangible personal property being transported passes to the purchaser at the point of origin, the freight or other transportation charges are not subject to the sales tax. For the purposes of this section it is immaterial whether the retailer or purchaser actually pays for any charges made for transportation, whether the charges were actually paid by one for the other, or whether a credit or allowance is made or given for such charges. Nothing in this section shall operate to exclude from the use tax any freight delivery or other like transportation charges. *Such charges shall be included as a portion of the cost price and subject to the use tax.*" (Emphasis ours.) G.S. 105-164.12.

[1, 2] The commerce clause of the Federal Constitution provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U. S. Const., Art. I, § 8. A sales tax on interstate

transactions violates the commerce clause and is therefore void and uncollectible. *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A.L.R. 944; *McLeod v. Dilworth Co.,* 322 U.S. 327, 88 L. Ed. 1304, 64 S. Ct. 1023. "While a sales tax and a use tax in many instances may bring about the same result, they are different in conception. They are assessments upon different transactions and are bottomed on distinguishable taxable events. . . . A sales tax is a tax on the freedom of purchase and, when applied to interstate transactions, it is a tax on the privilege of doing interstate business, creates a burden on interstate commerce and runs counter to the commerce clause of the Federal Constitution. . . . Conversely, a use tax is a tax on the enjoyment of that which was purchased after a sale has spent its interstate character." *Johnston v. Gill, Comr. of Revenue,* 224 N.C. 638, 643, 32 S.E. 2d 30, 33.

[3] A use tax "does not aim at or discriminate against interstate commerce. It is laid upon every purchaser, within the state, of goods for consumption, regardless of whether they have been transported in interstate commerce. Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end." *McGoldrick v. Berwind-White Co.,* 309 U.S. 33, 49, 84 L. Ed. 565, 60 S. Ct. 388.

[4] In *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524, a Washington statute subjected every retail sale of tangible personal property made in that state to a 2% sales tax. It also imposed a compensating tax on the privilege of using within the state any article of tangible personal property purchased at retail, at the rate of 2% of the purchase price, *including in such price the cost of transportation from the place where the article was purchased.* But the use tax did not apply to the use of any article which had already been subjected by the laws of Washington or any other state to a sales or use tax equal to or in excess of 2%. If the article had already been taxed at less than 2%, the Washington use tax rate was measured by the difference. This statute was attacked on the ground that it taxed the operations of interstate commerce and discriminated against such commerce unlawfully. Held: "The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. Things acquired or transported in interstate commerce may be subjected to property tax, non-discriminatory in its operation, when they have

become part of the common mass of property within the state of destination. . . . For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. . . . The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. . . . A state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively. . . . A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate." Accord, *Nelson v. Sears, Roebuck & Co.,* 312 U.S. 359, 85 L. Ed. 888, 61 S. Ct. 586, 132 A.L.R. 475. See also Annot.: 129 A.L.R. 222. Thus, the constitutionality of a use tax has long been determined.

Here, however, plaintiff complains that transportation charges *are not* included in the sales tax base when a sales tax is imposed on in-state sales with title passing at point of origin, while transportation charges *are* included in the use tax base when a use tax is imposed on the use, storage or consumption in this state of property purchased out of state with title passing at point of origin. Plaintiff contends this results in an unconstitutional discrimination against interstate commerce. We now examine the validity of this contention.

**[5]** Loss of business by local merchants because residents in the taxing state went outside to make tax-free purchases caused many states, including North Carolina, to resort to the use tax. 47 Am. Jur., Sales and Use Taxes, § 42. The legislative history of our sales and use tax discloses that when our sales tax was imposed in 1933, it tended to encourage residents to make out-of-state purchases to escape payment of the tax. As a result, the legislature enacted the use tax in 1937 intending by it to impose the same burdens on out-of-state purchases as the sales tax imposes on purchases within the state. *Robinson & Hale, Inc. v. Shaw, Comr. of Revenue,* 242 N.C. 486, 87 S.E. 2d 909; *Johnston v. Gill, supra.*

**[6-8]** A sales tax is assessed on the purchase price of property and is imposed at the time of sale. A use tax is assessed on the storage, use or consumption of property *and takes effect only after such use begins. Hosiery Mills v. Clayton, Comr. of Revenue,* 268 N.C. 673, 151 S.E. 2d 574. Regardless of the time and place of passing title, the taxable event for assessment of the use tax occurs when possession of the property is transferred to the purchaser within the taxing state for storage, use or consumption. *McGoldrick v. Berwind-*

*White Co., supra.* The property has then come to rest, forms a part of the common mass of property within the taxing state, and the taxable moment is at hand. *Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505; *Southern Pacific Co. v. Gallagher,* 306 U.S. 167, 83 L. Ed. 586, 59 S. Ct. 389. Thus, the taxable event for assessment of the use tax occurs after purchase and after transportation of the property into the taxing state for storage, use or consumption. Hence, the state is at liberty, if it pleases, to include transportation charges in the use tax base and has done so by enactment of G.S. 105-164.12. Such inclusion was approved in principle in *Henneford v. Silas Mason Co., supra.*

**[9-11]**    On the other hand, the taxable event for assessment of the sales tax occurs at the time of sale and purchase within the state. G.S. 105-164.4(1). No transportation charges have been incurred by the *purchaser* at that moment. The retail price upon which the sales tax is paid by the purchaser necessarily takes into account the transportation charges that have been paid on the goods to bring them to the retail outlet in North Carolina where the sale takes place. *Gee Coal Co. v. Dept. of Finance,* 361 Ill. 293, 197 N.E. 871, 102 A.L.R. 766; *State v. Menefee Motor Co.,* 18 La. App. 694, 139 So. 61; Annot.: 102 A.L.R. 768. Thus, the net effect of including interstate transportation charges in the use tax base and excluding intrastate transportation charges in the sales tax base is to equalize the burden of the tax on property sold locally and property purchased out of state. "When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed." *Henneford v. Silas Mason Co., supra* at 584.

    *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 10 L. Ed. 2d 202, 83 S. Ct. 1201, relied on by plaintiff, is distinguishable on the facts. There, Halliburton manufactured certain oil well equipment at its place of business in Oklahoma and assigned the equipment to field camps in Louisiana for use. In its Louisiana tax returns, Halliburton paid use taxes upon the value of the raw materials and semi-finished and finished articles used in manufacturing the equipment units. *The value of labor and shop overhead attributable to assembling the units was not included.* It was admitted by stipulation of the parties that there would have been no Louisiana sales tax or use tax due upon the labor and shop overhead had the units been assembled in Louisiana rather than in Oklahoma. Never-

theless, the Louisiana Collector of Revenue assessed a deficiency of $36,238.43 in taxes, including interest, on the labor and shop overhead costs of assembling the units. The court held that "[e]qual treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out of state. . . . The inequality of the Louisiana tax burden between in-state and out-of-state manufacturer-users is admitted. Although the rate is the same, the appellant's tax base is increased through the inclusion of its product's labor and shop overhead." The use tax was thereupon held invalid as discriminating against interstate commerce.

**[12]**  The facts in *Halliburton* are not analogous to the facts in this case. Here, transportation charges are necessarily a part of the price a retailer pays for his goods. In turn, such charges become a part of the retail price upon which a sales tax is imposed. In such fashion transportation charges are part of the sales tax base. Equality is attained with respect to the use tax when transportation charges on out-of-state purchases are included as a part of the use tax base. The Constitution permits a state to distribute its tax requirements as it sees fit if the result, "taken in its totality is within the state's constitutional power." *Gregg Dyeing Co. v. Query,* 286 U.S. 472, 480, 76 L. Ed. 1232, 52 S. Ct. 631, 84 A.L.R. 831. Plaintiff has failed to show any substantial discrimination in fact. G.S. 105-164.12 is constitutionally sound and places no discriminatory burden on interstate commerce. We hold that the transportation charges here in question were properly included in the use tax base.

**[15]**  This brings us to the second issue raised by plaintiff. Are cash discounts properly includable in the North Carolina use tax base when the seller bills the purchaser for the full amount of the sales price but allows a cash discount for payment within a specified period to time? G.S. 105-164.6(1), under which defendant seeks to tax cash discounts, imposes a use tax at the rate of 3% of the cost price of each item; and cost price is defined by G.S. 105-164.3(4) as "the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service costs, transportation charges or any expenses whatsoever." This statutory definition of cost price omits "cash discounts" from the factors *not* to be deducted in arriving at the cost price. The General Assembly rewrote the statute, effective July 1, 1967, and inserted "cash discounts" as one of the nondeductible items. Sess. Laws, ch. 1110, § 6 (1967). G.S. 105-164.3(4) now provides

that " 'cost price' means the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, *cash discounts*, labor or service costs, transportation charges or any expenses whatsoever." (Emphasis ours.) Plaintiff concedes that from and after the effective date of this amendment, cost price must be determined without deduction for cash discounts but contends that prior to July 1, 1967, the language of the statute required the use tax to be based upon the *actual cost*, as distinguished from the sale price, of articles used by plaintiff. We now examine the validity of this contention.

We are not concerned with whether the particular transaction in question constituted a "discount" as in cases involving trading stamps, trade-in allowances, trade discounts, and the like. Here, a *cash discount* was admittedly allowed in consideration of payment within a prescribed time. The question, then, is whether such cash discount should be deducted from the full amount of the sales price and excluded from the base on which the use tax is calculated. The answer is yes.

**[13]**    In construing and interpreting the language of a statute we must be guided by the primary rule of construction that the intent of the legislature controls. 50 Am. Jur., Statutes, § 223; *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 69 S.E. 2d 505. Where the language of a statute is clear and unambiguous judicial construction is not necessary. Its plain and definite meaning controls. *Davis v. Granite Corp.*, 259 N.C. 672, 131 S.E. 2d 335. But if the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent. *State v. Humphries*, 210 N.C. 406, 186 S.E. 473; *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797; *Underwood v. Howland, Comr. of Motor Vehicles*, 274 N.C. 473, 164 S.E. 2d 2.

**[14]**    Where the meaning of a tax statute is doubtful, it should be construed against the state and in favor of the taxpayer unless a contrary legislative intent appears. 51 Am. Jur., Taxation § 316; *State v. Campbell*, 223 N.C. 828, 28 S.E. 2d 499; *Sabine v. Gill, Comr. of Revenue*, 229 N.C. 599, 51 S.E. 2d 1; *Henderson v. Gill, Comr. of Revenue*, 229 N.C. 313, 49 S.E. 2d 754. "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the

citizen." *Gould v. Gould,* 245 U.S. 151, 153, 62 L. Ed. 211, 38 S. Ct. 53.

**[15-17]** Considered in light of these rules, we hold that when G.S. 105-164.6(1) and G.S. 105-164.3(4) are read aright they mean that a use tax at the rate of 3% of *the actual cost,* as distinguished from the initial sales price, shall be assessed with no deductions allowed for cost of materials used, labor or service costs, transportation charges or any other expenses. This seems to be the meaning, purpose and intent of these statutes. Cash discounts are not a part of the statutory tax base. To say, then, that *the actual cost* of an article includes the sum embraced in a cash discount which is neither paid by the purchaser nor received by the seller is to interpolate rather than interpret. Such interpretation would extend these statutes beyond the clear import of their language and resolve a doubtful meaning, if such it be, against the taxpayer. This is contrary to law. We are not unmindful of an administrative interpretation permitting the use tax to be applied to cash discounts. Such interpretations often provide significant aid to statutory construction and may be considered by the courts. Even so, they are not controlling. *Rubber Co. v. Shaw, Comr. of Revenue,* 244 N.C. 170, 92 S.E. 2d 799; *Bottling Co. v. Shaw, Comr. of Revenue,* 232 N.C. 307, 59 S.E. 2d 819; *Valentine v. Gill, Comr. of Revenue,* 223 N.C. 396, 27 S.E. 2d 2. And where there is conflict between the interpretation of an administrative agency and that of the courts, the latter will prevail. *Campbell v. Currie, Comr. of Revenue,* 251 N.C. 329, 111 S.E. 2d 319. The fact that the legislature amended the definition of "cost price" in 1967 to list cash discounts among the items not to be deducted when calculating actual cost is, nothing else appearing, a strong indication that the General Assembly considered such discounts deductible prior to the amendment. In case of an isolated, independent amendment to the tax law, as here, the presumption that a change in substance — not a clarification — was intended is fairly strong. *Oklahoma Tax Commission v. Stanolind Pipe Line Co.,* 113 F. 2d 853 (10th Cir. 1940).

In *Standard Oil Co. v. State,* 283 Mich. 85, 276 N.W. 908 (1937), sales taxes were assessed by the state on the basis of the gross amount of plaintiff's sales, including the amounts which plaintiff had given in cash discounts. Plaintiff sued for recovery of taxes which it had paid on cash discounts under such an assessment. The Michigan tax law, like ours, contained no specific provision concerning cash discounts. The Court said: ". . . [I]n the case of a cash discount, the seller gives the buyer an option to pay either one of

two prices, viz.: The price less discount if paid within a specified time or the price without discount if not paid within such time. . . . In our opinion a cash discount, if taken by the customer, is no part of the 'gross proceeds' of a retail sale. . . ." *A fortiori,* a cash discount is no part of the actual cost to the purchaser.

In *Napier v. John V. Farwell Co.,* 60 Colo. 319, 153 Pac. 694, the court defined *discount* as "an abatement from the face of the account, and the remainder is the actual purchase price of the goods charged in the account. A purchaser entitled to discounts never owes the face of the bills. . . . His debt is the net of the bills after the agreed discount has been deducted. . . ." This is in accord with our view. We hold that cash discounts should be excluded from the base on which the use tax is calculated. Decisions to the contrary are not persuasive. See *Frank J. Klein & Sons, Inc. v. Comptroller of Treasury,* 233 Md. 490, 197 A. 2d 243.

[19] Is any portion of defendant's counterclaim barred by lapse of time? Plaintiff applied under G.S. 105-266.1(a) for a refund of use taxes paid on transportation charges. Defendant conducted a hearing on the application and denied the refund. In lieu of petitioning for administrative review by the Tax Review Board under G.S. 105-241.2, plaintiff then elected to bring this action for recovery of the alleged overpayment, as was its right, under G.S. 105-266.1(c). Plaintiff now concedes it is not entitled to any refund so this aspect of the case is moot. Hence, statutes governing suits to recover an *overpayment* of taxes, G.S. 105-266.1 and G.S. 105-267, are no longer pertinent. We are now concerned with alleged *underpayment* of taxes and with the statutes relating thereto.

[18] Defendant, Commissioner of Revenue, now brings suit, i.e., his counterclaim, for additional use taxes. His first audit of plaintiff's books was completed about November 10, 1966, and indicated plaintiff owed a balance of $71,645.00 tax, penalty and interest for the period October 1962 through May 1966. A notice of assessment for this amount was furnished plaintiff under date of November 16, 1966. Further audit amendments and adjustments and additional payments by plaintiff eliminated all sums in controversy save that portion of the assessment based on a 3% tax on transportation charges and cash discounts which plaintiff refused to pay. Defendant amended his answer to allege a counterclaim for recovery of that part of the assessment. The counterclaim is obviously the unpaid portion of the assessment which was levied under G.S. 105-241.1. That statute therefore applies to this recovery. Subsection (e) thereof provides, in pertinent part, that "[w]here . . . a return

has been filed and in the absence of fraud, the Commissioner of Revenue shall assess any tax or additional tax due from a taxpayer within three (3) years after the date upon which such . . . return is filed or within three (3) years after the date upon which such . . . return was required by law to be filed, whichever is the later." This statute of limitations runs against the sovereign since it is expressly named therein. *Wilmington v. Cronly,* 122 N.C. 388, 30 S.E. 9; *Charlotte v. Kavanaugh,* 221 N.C. 259, 20 S.E. 2d 97; *Fertilizer Co. v. Gill, Comr. of Revenue,* 225 N.C. 426, 35 S.E. 2d 275.

[19]    Plaintiff was required to file a return on or before the 15th day of the month next succeeding the month in which the tax accrued and remit the amount of tax due for the month covered by the return. G.S. 105-164.16 and G.S. 105-164.17. This was done. It thus appears, and we hold, that the Commissioner of Revenue can make no assessment in this case which extends to use taxes incurred more than three years prior to November 16, 1966. All use taxes accruing prior to November 16, 1963, are barred by G.S. 105-241.1(e). Taxes which cannot be legally assessed cannot be legally recovered.

In view of the conclusions reached, a discussion of the remaining questions raised becomes unnecessary.

The case is remanded to the superior court for entry of judgment consistent with this opinion.

Error and remanded.