LEE CAMPBELL v. JAMES S. CURRIE, COMMISSIONER OF REVENUE OF THE
STATE OF NORTH CAROLINA.

(Filed 2 December, 1959.)·

**1. Taxation § 23½—**

G.S. 105-262 empowers the Commissioner of Revenue to classify and
determine by administrative regulation that sales of articles of tangible
personal property used in direct production or extractive processes in-
side a mine should be considered as sales of mill machinery, mill mach-
inery parts or accessories within the purview of G.S. 105-164.13 (12)
and subject to the wholesale rather than retail sales tax, such regula-
tion not being in conflict with the statute.

**2. Taxation § 30—**

Lumber used in constructing vertical shafts and horizontal tunnels
for mining operations, which lumber is either splintered by blasting or
abandoned in the shaft after the vein of minerals is exhausted, is used
in the direct production or extractive processes inside a mine and is not
housing placed under ground within the purview of Sales and Use Tax
Regulation No. 4 of the Commissioner of Revenue, and therefore the
sale of such lumber to the mining company is subject to the wholesale
and not the retail sales tax rate.

**3. Taxation § 23½—**

While a decision or regulation of the Commissioner of Revenue inter-
preting a taxing statute is not controlling, the Commissioner of Revenue
is authorized by G.S. 105-262 to implement taxing statutes, with certain
specific exceptions, and his interpretation is made *prima facie* correct,
G.S. 105-264, and such interpretive regulation will ordinarily be upheld
when it is not in conflict with the statute and is within the authority
of the Commissioner to promulgate.

**4. Same—**

A person paying a tax computed in accordance with a regulation of
the Commissioner of Revenue in effect for more than fifteen years with-
out change or modification by statute or otherwise, will ordinarily be
protected against an additional assessment regardless of whether the
1957 amendment to G.S. 105-262 has retroactive effect or not, since the
amendment expressly shows the legislative intent to protect a taxpayer
from additional assessment where he has paid his tax in accordance
with and in reliance upon the terms of a regulation duly promulgated.

HIGGINS, J., not sitting. .

APPEAL by defendant from *Hall, J.,* April Term, 1959, of GRANVILLE.

This is a civil action instituted in the Superior Court of Granville
County by the plaintiff to recover of defendant taxes paid under pro-
test.

The taxes in question were sales taxes assessed by the defendant
at the retail rate of three per cent on sales of lumber made by the

plaintiff to Tungsten Mining Corporation for use in its mining opera-
tions.

The plaintiff contends that the sales come under the classification
of "sales of mill machinery or mill machinery parts and accessories
to manufacturing industries and plants," as defined by the Sales and
Use Tax Regulation No. 4, and thus taxable at the wholesale rate of
1/20 of one per cent.

The parties stipulated the facts essential to a determination of the
controversy. It was stipulated, among other things, that (1) during
the period from 1 July 1955 to 31 December 1957 the plaintiff made
sales of lumber both at retail and wholesale to the Tungsten Mining
Corporation for which the plaintiff received $126,023.85. (2) That as
of 6 February 1958 the defendant levied against the plaintiff an as-
sessment for $3,329.87, purportedly plaintiff's additional sales tax
liability for the period involved. Plaintiff drew a check on the Union
National Bank of Oxford, North Carolina, on 30 August 1958, in the
sum of $3,426.38, which check included accrued interest, paying said
assessment under protest, and the check was paid on 12 September
1958 by said bank. (3) Demand was made in apt time for refund. The
defendant did not comply with the demand, and this action was
brought pursuant to the provisions of G.S. 105-267 to recover the
aforesaid sum of $3,426.38 with interest, less an amount included in
the figure $3,426.38, of $64.52 which is not included in the controversy,
leaving the sum of $3,361.86 with interest which the plaintiff seeks
to recover. (4) That 98.6% of the lumber sold by the plaintiff to
Tungsten Mining Corporation during the period involved was used
by said mining corporation in the removal of tungsten ore from be-
neath the earth's surface. (5) In the mining process of Tungsten Min-
ing Corporation two vertical shafts in close proximity to each other
are sunk from the surface to a predetermined depth or depths. Next,
at levels or intervals of 200 feet each, tunnels are extended out from
these shafts, usually of the dimensions of 8 feet by 8 feet. These tun-
nels out from the shafts begin at the 200 foot level below the surface.
(6) In mining parlance, the method used is known as stoping and
the successive intervals or lifts comprise a stope. When the vein runs
out or the surface is reached, all of the lumber used in the stoping
process remains where it was placed, except such as may be broken
or splintered in the blasting. This broken or splintered lumber is shovel-
ed into the chute with the ore and is carried in cars to the shaft and
hoisted to the surface, where it is separated from the ore. This broken
or splintered lumber has no value and is discarded. (7) After the vein
runs out or the surface is reached, the entire stope is filled with waste

rock or sand or both and none of the lumber is recovered, and such lumber is abandoned for all time and purposes. (8) The 98.6 per cent of all lumber sold by the plaintiff to Tungsten Mining Corporation during the period involved was not joined together in any definite manner, but its use necessarily lent itself to the conditions encountered in the stopping process at various levels and intervals. (9) That recovery of any part of the lumber so used was and is wholly impracticable and an effort to recover any part of such lumber would be fraught with dangerous possibilities.

Upon the facts stipulated, which the court found to be the facts in the case, the court further found and concluded:

"1. That 98.6% of the lumber sold and delivered by plaintiff to Tungsten Mining Corporation during the period July 1, 1955 to December 31, 1957, both inclusive, was used in the direct production and extractive process inside the mine in the mining operations conducted by said Tungsten Mining Corporation.

"2. That such lumber is and shall be considered tangible personal property and its sale by the plaintiff to Tungsten Mining Corporation for the use made as aforesaid by Tungsten Mining Corporation is considered and found by the court to be embraced within the term sales of mill machinery, mill machinery parts and accessories and subject to the wholesale rate of tax of 1/20 of 1 per cent.

"3. That the plaintiff is entitled to have and recover of the defendant the sum of $3,361.86, with interest from September 12, 1958, and his costs of this action to be taxed."

Judgment was entered accordingly. The defendant appeals, assigning error.

*Royster & Royster for plaintiff.*

*Attorney General Seawell, Assistant Attorneys General Abbott and Pullen for defendant.*

DENNY, J. The defendant's assignment of error No. 1 is based on finding of fact No. 1 as set forth in the judgment herein. It is clear that this finding of fact is supported by the facts stipulated by the parties and, therefore, this assignment of error is overruled.

Assignment of error No. 2 is based on finding of fact No. 2 to the effect that the lumber involved shall be considered tangible personal property and by reason of the use made of it by Tungsten Mining Corporation it is considered and found to be embraced within the term sales of mill machinery, mill machinery parts and accessories and subject to the wholesale rate of tax of 1/20 of one per cent.

The Legislature in the enactment of our Revenue laws has recognized the necessity of authorizing the Commissioner of Revenue to promulgate regulations implementing and clarifying the meaning of our Revenue statutes not inconsistent with existing laws.

G.S. 105-262 authorizes the Commissioner of Revenue to "initiate and prepare such regulations, not inconsistent with law, as may be useful and necessary to implement the provisions of all the articles of subchapter I (except article 8B) and article 36 of subchapter V * * *"

The Sales and Use Tax Regulation No. 4 upon which the plaintiff is relying, was promulgated on 15 July 1944 by the Commissioner of Revenue of North Carolina, pursuant to the authority granted in §§ 423 and 931 of the Revenue Act of 1939, as amended, and in compliance with Chapter 754 of the Session Laws of North Carolina of 1943.

The regulation under consideration deals with "sales and purchases of tangible personal property for use in connection with manufacturing and other industrial processing," and the pertinent part with respect to Mining and Quarrying in Section VII thereof reads as follows: "Sales of articles of tangible personal property used in direct production or extractive processes inside the mine shall be considered sales of mill machinery, mill machinery parts and accessories, and subject to the wholesale tax of one-twentieth of one per cent. However, sales or purchases of items such as caps, lights, gloves or other belongings or devices paid for and owned by employees but which are used in connection with their work are taxable at the rate of three per cent."

Regulation No. 4 in a preceding section reads as follows: "Materials going into buildings and structures are subject to tax of three per cent."

The appellant contends that the lumber sold by the plaintiff to Tungsten Mining Corporation was used to make stopes; that the lumber became floors, walls and ceilings within which the miners worked and was equivalent to housing placed under, around and above a manufacturing plant and therefore taxable at three per cent.

The appellant further contends that regulation No. 4 goes beyond the authority granted by the Legislature to the Commissioner of Revenue in classifying mill machinery, mill machinery parts and accessories.

There is no disagreement about the fact that 98.6 per cent of the lumber purchased by the Tungsten Mining Corporation from the plaintiff was used and became obsolescent in connection with the re-

moval or extraction of ore from beneath the earth's surface. The stipulated facts compel this conclusion; and in our opinion the right to implement the provisions of all articles of subchapter I (except article 8B) and article 36 of subchapter V, as provided in G.S. 105-262, gave the Commissioner of Revenue the right to construe, classify and determine that under the provisions of the Revenue Act sales of articles of tangible personal property used in direct production or extractive processes inside a mine may be classified or considered as sales of mill machinery, mill machinery parts and accessories, and subject only to the wholesale tax. Moreover, such interpretation has been in effect and promulgated in a regulation pursuant to the provisions of G.S. 105-262 for more than fifteen years. In light of the stipulated facts, we do not construe the use made of this lumber to constitute a building or structure within the meaning of our tax laws.

Moreover, G.S. 105-264 reads in part as follows: "It shall be the duty of the Commissioner of Revenue to construe all sections of this subchapter (except article 8B) and all sections of article 36 of subchapter V; provided, such construction shall not be inconsistent with applicable regulations duly promulgated under the provisions of G.S. 105-262 * * *. Such decisions by the Commissioner of Revenue shall be *prima facie* correct, and a protection to the officers and taxpayers affected thereby. * * *"

The construction placed upon the Revenue Act by the Commissioner of Revenue will be given due consideration by the courts, although we have repeatedly held that such construction is not controlling. *Cannon v. Maxwell*, 205 N.C. 420, 171 S.E. 624; *Powell v. Maxwell*, 210 N.C. 211, 186 S.E. 326; *Valentine v. Gill*, 223 N.C. 396, 27 S.E. 2d 2; *Bottling Co. v. Shaw*, 232 N.C. 307, 59 S.E. 2d 819; *Rubber Co. v. Shaw*, 244 N.C. 170, 92 S.E. 2d 799. Therefore, our courts are not restricted with respect to the interpretation of the provisions of the Revenue Act by reason of any decision made or regulation promulgated by the Commissioner of Revenue. If there should be a conflict between the interpretation placed upon any of the provisions of the Revenue Act by the Commissioner of Revenue and the interpretation of the courts, the interpretation or construction by the latter will prevail.

The cases of *States' Rights Democratic Party v. Bd. of Elections*, 229 N.C. 179, 49 S.E. 2d 379; *S. v. Curtis*, 230 N.C. 169, 52 S.E. 2d 364, and similar cases cited by the appellant, are not controlling on the facts presented on this record

In the case of *Field v. Clark*, 143 U.S. 649, 36 L. Ed. 294, the Court said: "The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state

CAMPBELL *v.* CURRIE, COMMISSIONER OF REVENUE.

of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation." The foregoing was cited with approval by this Court in the case of *Provision Co. v. Daves,* 190 N.C. 7, 128 S.E. 593. See also *United States v. Grimaud,* 220 U.S. 506, 55 L. Ed. 563 and *Bailey v. Evatt,* 142 Ohio St. 616, 53 N.E. 2d 812.

Since the interpretation placed upon the statute was promulgated in a regulation more than fifteen years ago and has not been changed by legislative act or otherwise modified, and the regulation is made *prima facie* correct by G.S. 105-264, we are constrained to uphold the decision of the court below.

The General Assembly of 1957, Session Laws of North Carolina, Chapter 1340, amended G.S. 105-264 by adding at the end thereof the following: "Whenever the Commissioner of Revenue shall construe any provisions of the revenue laws administered by him and shall issue or publish to taxpayers in writing any regulation or ruling so construing the effect or operation of any such laws, such ruling or regulation shall be a protection to the officers and taxpayers affected thereby and taxpayers shall be entitled to rely upon such regulation or ruling. In the event the Commissioner of Revenue shall change, modify, repeal, abrogate, or alter any such regulation or ruling any taxpayer who has relied upon the construction or interpretation contained in the Commissioner's previous ruling or regulation shall not be liable for any additional assessment on account of any tax not paid by reason of reliance upon such ruling or regulation and which might have accrued prior to the date of the change, modification, repeal abrogation, or alternation by the Commissioner, and during the effective period of such prior ruling or regulation."

In view of the conclusion we have reached, it is not necessary to decide whether or not the above amendment was intended to be retrospective as well as prospective. 1957 Session Laws of North Carolina, Chapter 1340, section 16. However, in any event, it became effective on 1 July 1957 and, in our opinion, expressly shows an intent on the part of the Legislature to protect a taxpayer from an additional assessment where such taxpayer has made his returns and paid the taxes in accord with the terms of a regulation promulgated by the Commissioner of Revenue and in reliance thereon.

The remaining assignments of error are based on exceptions to the conclusion that the plaintiff is entitled to recover of the defendant the

sum of $3,361.86 with interest, and to the signing of the judgment. These assignments of error are overruled.

The judgment below is
Affirmed.

HIGGINS, J., not sitting.