IN THE MATTER OF THE DENIAL BY THE SECRETARY OF REVENUE OF CLAIM FOR REFUND OF NORTH CAROLINA INHERITANCE TAXES BY THE ESTATE OF SHANKAR N. KAPOOR, DECEASED

No. 52

(Filed 5 May 1981)

**1. Administrative Law § 5— appeal from decision of Tax Review Board—applicability of Administrative Procedure Act**

Provisions of the N.C. Administrative Procedure Act governed review of a decision of the Tax Review Board denying a refund of N.C. inheritance taxes on certain insurance proceeds where all relevant administrative remedies had been exhausted and there was no adequate judicial review provided under any other statute. G.S. 150A-43.

**2. Taxation § 23— rules of construction of tax statutes**

When the meaning of a term providing for taxation is ambiguous, it is construed against the State and in favor of the taxpayer unless a contrary legislative intent appears, but when a statute provides for an exemption from taxation a contrary rule applies and any ambiguities are resolved in favor of taxation.

**3. Taxation § 27.1— separation agreement—life insurance trust—proceeds as debt of decedent—deduction for inheritance tax purposes**

Where a separation agreement required the decedent to "maintain in full force and effect . . . a life insurance trust in the amount of at least $150,000" for the benefit of decedent's former wife and their children and "to make timely payment of all premiums due on the policies placed in said trust," and all premiums due on the policies had been paid at the time of decedent's death, the decedent's "debt" under the agreement was not the amount of money required to maintain the policies but was the $150,000 in life insurance proceeds required to fund the trust. Furthermore, the obligation to fund the trust was supported by consideration and was a valid contractual debt where the separation and trust agreements showed an intention by decedent to extend his obligation to provide alimony and child support beyond the time of his death in exchange for his former wife's relinquishment of her marital and all other claims against decedent. Therefore, the life insurance proceeds were a "debt of decedent" deductible from decedent's estate for inheritance tax purposes pursuant to G.S. 105-9(4).

Justice MEYER dissenting.

ON discretionary review pursuant to G.S. 7A-31 of the decision of the Court of Appeals, 47 N.C. App. 500, 267 S.E. 2d 418 (1980), reversing judgment for petitioner-estate entered by *Hobgood (Hamilton H.), Judge,* at the 8 October 1979 Civil Session of Superior Court, WAKE County.

By this appeal, we interpret the meaning of G.S. 105-9(4), which provides a deduction from the state inheritance tax for "[d]ebts of decedent."

*Haywood, Denny & Miller, by B. M. Sessoms and James H. Johnson III, for appellants.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General George W. Boylan, for the Secretary of Revenue.*

CARLTON, Justice.

I.

Shankar N. Kapoor, a practicing orthopaedic surgeon, died testate on 23 December 1973 survived by his second wife, Nancy N. Kapoor, his former wife, Ruth Kapoor, and two minor children by his first marriage. Prior to obtaining a divorce, decedent and Ruth Kapoor executed a separation agreement, by the terms of which decedent obligated himself to "maintain in full force and effect . . . a life insurance trust in the amount of at least $150,000" for the benefit of Ruth Kapoor and the children. Decedent established the trust as required and at the time of his death all premiums had been paid and policies in the amount of $151,754.63 were in effect.

The trustee, Wachovia Bank & Trust Company, N.A., collected the policy proceeds. The executor, Central Carolina Bank & Trust Company, filed with the North Carolina Department of Revenue a North Carolina Inheritance and Estate Tax Return and with the Internal Revenue Service a United States Estate Tax Return. In both, the executor included the proceeds of the life insurance policies in the amount of $151,754.63. These amounts were included in the returns without any corresponding deduction. The executor timely paid North Carolina inheritance taxes of $15,464.31 and federal estate taxes of $23,895.53.

Thereafter, the executor requested a refund of the taxes paid on the insurance proceeds from both the state and federal authorities based on a deduction from the proceeds which the executor claimed was allowable under state and federal law. The Internal Revenue Service allowed the claim for refund in the amount of $22,735.07. The requested refund from the North

Carolina Department of Revenue in the amount of $14,510.58 was denied in toto.

The executor, pursuant to G.S. 105-266.1, requested a hearing on the denial of its claim for refund before the Secretary of Revenue, and this hearing was held pursuant to the procedures outlined in G.S. 105-241.1 on 20 January 1978. The Secretary denied the claim for refund.

On 17 February 1978, pursuant to G.S. 105-241.2, the executor filed for review before the Tax Review Board. The Board held a hearing and affirmed the decision of the Secretary of Revenue. Tax Review Board Administrative Decision No. 152 (June 21, 1978).

The executor, pursuant to the Administrative Procedure Act, G.S. Chapter 150A, petitioned for judicial review of this administrative decision on the grounds that the decision was affected by errors of law, unsupported by substantial evidence in view of the entire record and arbitrary and capricious. A hearing was held before Judge Hobgood at the 8 October 1979 Civil Session of Superior Court, Wake County, and Administrative Decision No. 152 of the Tax Review Board was reversed. Judge Hobgood found that the Tax Review Board's conclusions of law were "erroneous upon the facts found" and "erroneous as a matter of law." The Department of Revenue was ordered to refund to petitioner the amount of $14,510.58 together with interest as provided by law.

The Secretary of Revenue appealed, and the Court of Appeals reversed the superior court. The executor petitioned this Court for discretionary review. We allowed the petition on 16 September 1980.

II.

[1] Because this appeal involves review of a decision of an administrative agency, we first determine which statute provides for and governs our review.

When faced with an appeal from a decision of an administrative agency, courts should first turn to the North Carolina Administrative Procedure Act (hereinafter "APA") to discover whether that act controls. The formula for its application is simple. The APA allows judicial review of a final agency deci-

sion in a contested case when all relevant administrative remedies have been exhausted and there is no adequate judicial review provided under any other statute. G.S. § 150A-43 (1978); *accord, State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau,* 300 N.C. 381, 269 S.E. 2d 547 (1980). Applying that formula to the case at hand, we find that the Tax Review Board is an agency, within the meaning of that term as set forth in G.S. 150A-2(1) (1978); that all administrative remedies have been exhausted, *see* G.S. 105-241.2 to .3, -266.1 (1979); and that judicial review is not provided for by any other statute.[1] Thus, the provisions of the APA govern our review.

We next ascertain the appropriate scope of inquiry as limited by the standards set forth in G.S. 150A-51 (1978). The appropriate standard or standards can be determined only after examination of the issues raised by the appeal. *North Carolina Savings and Loan League v. North Carolina Credit Union Commission,* 302 N.C. 458, 276 S.E. 2d 404 (1981). On this appeal the statutory term "debt of decedent" must be construed and that interpretation applied to the undisputed facts to determine whether petitioner is entitled to a deduction in the amount of the policy proceeds. In reviewing an administrative agency's interpretation of a term, the appropriate inquiry is whether that interpretation is "affected by . . . error of law," G.S. 150A-51(4). *North Carolina Savings and Loan League v. North Carolina Credit Union Commission,* 302 N.C. 458, 276 S.E. 2d 404. After the meaning of "debt of the decedent" is ascertained, we will then review the Tax Review Board's decision to determine if its conclusion that petitioner is not entitled to the deduction is supported by substantial evidence in view of the entire record, G.S. 150A-51(5). With these standards in mind, we turn to the merits of this appeal.

## III.

Petitioner contends that it is entitled to a deduction in the amount of the insurance policy proceeds paid into the trust

1. We note that G.S. 105-241.3 provides for appeal from the decision of the Tax Review Board under the provisions of Article 33 of Chapter 143 of the General Statutes. That Article, dealing with judicial review of certain administrative agency decisions, was repealed effective 1 February 1976. Law of April 12, 1974, 1973 N.C. Sess. Laws 691, Ch. 1331, s. 2, as amended by Law of March 24, 1975, 1975 N.C. Sess. Laws 44, Ch. 69, s. 4.

created for the support and maintenance of decedent's first wife and children by virtue of G.S. 105-9(4) (1979), which provides: "In determining the clear market value of property taxed under this Article, or schedule, the following deductions, and no others, shall be allowed: . . . Debts of decedent." It is the scope of this term which determines the outcome of this appeal.

[2] Special canons of statutory construction apply when the term under consideration is one concerning taxation. When the meaning of a term providing for taxation is ambiguous, it is construed against the state and in favor of the taxpayer unless a contrary legislative intent appears. *Institutional Food House, Inc. v. Coble, Secretary of Revenue*, 289 N.C. 123, 221 S.E. 2d 297 (1976); *In re Clayton-Marcus Company*, 286 N.C. 215, 210 S.E. 2d 199 (1974); *Colonial Pipeline Company v. Clayton, Commissioner of Revenue*, 275 N.C. 215, 226-27, 166 S.E. 2d 671, 679 (1969). But when the statute provides for an *exemption* from taxation a contrary rule applies and any ambiguities are resolved in favor of taxation. *E.g., In re Clayton-Marcus Company*, 286 N.C. 215, 210 S.E. 2d 199. "The underlying premise when interpreting taxing statutes is: 'Taxation is the rule; exemption the exception.'" *Broadwell Realty Corporation v. Coble, Secretary of Revenue*, 291 N.C. 608, 611, 231 S.E. 2d 656, 658 (1977) (quoting *Odd Fellows v. Swain*, 217 N.C. 632, 637, 9 S.E. 2d 365, 368 (1940)). In all tax cases, the construction placed upon the statute by the Commissioner of Revenue, although not binding, will be given due consideration by a reviewing court. *Campbell v. Currie, Commissioner of Revenue*, 251 N.C. 329, 111 S.E. 2d 319 (1959). Despite these special rules, our primary task in interpreting a tax statute, as with all other statutes, is to ascertain and adhere to the intent of the Legislature. *In re Hardy*, 294 N.C. 90, 240 S.E. 2d 367 (1978). The cardinal principle of statutory construction is that the intent of the Legislature is controlling. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978).

Citing the principle of strict construction of exemptions from taxation, the Secretary of Revenue contends that the term "debts of decedent" should be construed narrowly and technically to include only those obligations of the decedent which were due and owing prior to his death and as to which the person to whom the obligation was owed could have maintained a suit. "Strictly speaking, a decedent's 'debts' include only those obligations which he

owes at the time of his death." 2 Wiggins, *Wills and Administration of Estates in North Carolina* § 238 (1964). The Court of Appeals accepted the Secretary's contentions as to the scope of G.S. 105-9(4) and concluded that the only obligation owed by decedent prior to his death was the maintenance of the life insurance policies by timely payment of all premiums. Because all the premiums due on the policies had been paid at the time of death, decedent had fully performed his obligations under the separation agreement and there was no debt to deduct:

> [W]hat decedent owed under the pertinent provision of the separation agreement was "a life insurance trust in the amount of at least $150,000.00" maintained in full force and effect, and this obligation was fulfilled by the payment of the necessary life insurance premiums. At the time of decedent's death no debt existed with respect to this obligation.

47 N.C. App. at 501, 267 S.E. 2d at 419.

Petitioner, on the other hand, contends that the deduction for debts of the decedent under state law should be interpreted to conform with deductions allowable under federal law. In computing the value of the taxable estate for federal estate tax purposes, deductions are allowed "for claims against the estate" and "for unpaid mortgages on, or any indebtedness in respect of property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate." I.R.C. § 2053(a)(3)-(4). Petitioner contends that the definition of "debts of decedent" suggested by the Secretary and adopted by the Court of Appeals is the same as that of "claims against the estate" under federal law and, had our Legislature intended such a narrow scope for the deduction, it would have used the federal language. According to petitioner, the choice of the term "debts of decedent" in lieu of "claims against the estate" evidences a legislative intent to give the deduction a greater scope than claims against the estate and, therefore, "debts of decedent" was intended to encompass both the claims and indebtedness provisions of federal law. While the federal provisions provide some guidance, absent a clear indication of legislative intent to parallel federal law by use of identical language or otherwise, we cannot accept federal law as controlling. Instead, we will look to "the language of the statute, the spirit of the act, and

what the act seeks to accomplish." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E. 2d 281, 283 (1972).

The purpose of our inheritance tax laws is to raise revenues for the operation of the state government by imposing a tax on the transfer of property when the transfer occurs by reason of death. G.S. §§ 105-1, -2 (1979). The tax imposed upon the transfer depends upon the amount going to each beneficiary and each beneficiary's relationship to the decedent. G.S. §§ 105-4 to 105-6.[2] In determining the value of the property taxed under the inheritance laws, deductions are allowed for:

(1) . . . [U]npaid ad valorem taxes accruing during the calendar year of death.

(2) Drainage and street assessments (fiscal year in which death occurred).

. . . .

(4) Debts of decedent.

(5) Estate and inheritance taxes paid to other states, and death duties paid to foreign countries.

G.S. § 105-9 (1979).[3] From this list of allowable deductions, we glean that the Legislature intended that the value of the gross estate be reduced by the amount of obligations associated with the property included therein.

[3]  The real questions, then, are what was dedecent's true debt under the separation agreement and whether the debt was validly contracted.

The separation agreement creating the obligation requires Dr. Kapoor, the decedent, to "maintain in full force and effect in

---

2. An additional tax is imposed when the amount of tax computed on the basis of amount and relationship is less than the maximum state death tax credit allowable by the Federal Estate Tax Act. The additional tax is the amount of the difference between the maximum credit and the state inheritance tax otherwise imposed. G.S. § 150-7 (1979).

3. This statute also allows deductions for taxes accrued and unpaid at the death of the decedent, funeral and burial expenses, the cost of a monument, commissions of the personal representative and other costs of administration. G.S. § 105-9(1), -9(3), -9(6), -9(7), -9(8).

accordance with the provisions thereof, a life insurance trust in the amount of at least $150,000.00 for the benefit of the party of the second part [Ruth Kapoor] and/or their children. The party of the first part agrees to make timely payment of all premiums due on the policies placed in said trust . . . ." The Court of Appeals construed this language as creating an obligation to pay the premiums only and not to create a debt of $150,000. We cannot agree with the Court of Appeals' conclusion. While the separation agreement is phrased in terms of maintenance of the life insurance trust and payment of the premiums, we conclude that Dr. Kapoor's "debt" under the agreement was, in reality, the $150,000. What Mrs. Kapoor bargained for, and what she gave up her marital rights for, was not the amount of money required to maintain the policies, but was the proceeds the policies would yield at Dr. Kapoor's death. That the amount of the proceeds is the debt becomes even more clear when a breach of the agreement by Dr. Kapoor at the time of his death is hypothesized. Mrs. Kapoor would have a claim for the entire amount of the proceeds, not just the amount of premiums unpaid. Indeed, it is conceded by the Secretary of Revenue that had Dr. Kapoor failed to maintain the policies, Mrs. Kapoor would have a claim against the estate for the full amount of the proceeds and that that amount would be deductible as a debt of the decedent. It is clear to us that Dr. Kapoor's "debt" under the separation agreement was to leave, at his death, a trust in the amount of at least $150,000; the obligation to purchase insurance and to pay the premiums was merely the method chosen by the parties to fund the trust and to guarantee the corpus. A breach of this agreement would have no effect upon the amount or character of the contractual obligation owed; the debt would still be the amount of the insurance proceeds had the policies been purchased and maintained as promised. Thus, we hold that decedent's "debt" under the separation agreement was the $150,000 proceeds required to fund the trust.

The sole remaining question is whether the obligation to fund the trust is a valid contractual debt, one supported by consideration.

The duty of a husband to pay alimony is personal and terminates at his death. *See generally* 2 R. Lee, *North Carolina Family Law* § 153 (4th ed. 1980). The same is true of a father's obligation to support his children. *Lee v. Coffield*, 245 N.C. 570, 96

S.E. 2d 726 (1957). However, the husband and father may by contract create an obligation to provide alimony and child support which survives his death and which constitutes a charge against his estate. *Layton v. Layton*, 263 N.C. 453, 139 S.E. 2d 732 (1965); Lee, *supra* at § 153. The intention that the obligation survive the husband-father's death must be clearly expressed. *Layton v. Layton*, 263 N.C. 453, 139 S.E. 2d 732.

We therefore examine the documents before us to determine whether Dr. Kapoor entered into a contractual obligation to support his wife and children by an agreement which expressed a clear intention that the obligation should survive his death. Paragraph 5 of the separation agreement provided essentially that Dr. Kapoor agreed to establish and maintain a life insurance trust in the amount of at least $150,000 for the benefit of his wife and children. He further agreed to make timely payments of all premiums due on the policies. Simultaneously with the execution of the separation agreement, and in accordance with Paragraph 5, Dr. Kapoor executed a trust agreement which named Wachovia Bank & Trust Company, N.A., as trustee and which agreement provided that at least $150,000 of insurance proceeds on Dr. Kapoor's life would be made payable to the trustee. The record discloses that Wachovia was named as trustee and beneficiary of two separate policies totaling $160,000. The trust agreement provided, *inter alia*, that in the event that Ruth Kapoor survived Dr. Kapoor and had not remarried, the net income of the trust would be paid to Ruth Kapoor for so long as she lived and remained unmarried. With respect to the principal of the trust, the trustee was empowered with discretion to provide such amounts to Ruth Kapoor and the children as it deemed "reasonably necessary for the support, care, and comfort" of Ruth Kapoor and the children in the manner to which they had been accustomed during Dr. Kapoor's life and for their emergency and educational needs. The agreement expressly provided that during the life of Ruth Kapoor and while she was not married to a person other than Dr. Kapoor, Dr. Kapoor possessed no right to revoke or amend the agreement and no rights in the insurance policies on his life.

Together, these documents evince an unmistakable intention to extend the obligation to provide alimony and child support beyond Dr. Kapoor's death. In exchange for Dr. Kapoor's promise to fund the trust Mrs. Kapoor relinquished all her marital rights

and all other claims against Dr. Kapoor. The release of marital rights was valid consideration for Dr. Kapoor's promise and a binding and enforceable contract was thereby created.

Because the "debt" of funding the trust was validly contracted for, we hold that petitioner is entitled to deduct from the taxable estate the proceeds going into the life insurance trust as a debt of decedent under G.S. 105-9(4).[4] Accordingly, petitioner is entitled to a corresponding refund of inheritance taxes paid on those proceeds.

The decision of the Court of Appeals is reversed. This cause is remanded to that court with instructions to remand to the Superior Court, Wake County, for reinstatement of the judgment filed on 14 November 1979 in favor of petitioner.

Reversed and Remanded.

Justice MEYER dissenting.

I must respectfully dissent. It is clear that decedent's obligation under the separation agreement was to "maintain in full force and effect in accordance with the provisions thereof, a life insurance trust in the amount of at least $150,000.00 for the benefit of the party of the second part and/or their children" and in connection with said trust "to make timely payment of all premiums due on the policies placed in said trust . . . ." Decedent fully complied with his obligation under the separation agreement. As of the date of his death, he was not indebted for any portion of any premium payment and the trust was in full force and effect.

The majority concludes that the language of the separation agreement creating decedent's obligation to maintain the trust in question clearly expresses a contract to create an obligation that survives his death. I am unwilling to go that far. The majority

---

4. We note that our decision will not have the effect of allowing a deduction in cases in which the life insurance proceeds are not part of the property taxed under our statutes even though there is still a "debt of the decedent." G.S. 105-9, the sole statute providing for deductions, allows a deduction which is associated with certain property only when that property is taxed under the inheritance laws. If the insurance proceeds were not includable as property of decedent, no deduction for indebtedness associated with those proceeds will be allowed.

concedes that, if any "debt" was created by the separation agreement, it was the " 'debt' of funding the trust . . . ." If that is correct, and if, at the time of decedent's death, there remained no further obligation to fund the trust, wherein can there be found a "debt" of decedent?

Simply put, I cannot equate decedent's "debt" at the time the separation agreement was made (to-wit, to maintain the trust in full force and effect) with an agreement to pay the "proceeds" of $150,000.00. I do not agree that decedent's "obligation to purchase insurance and to pay the premiums was merely the method chosen by the parties to fund the trust and to guarantee the corpus."

While I believe it illogical that the proceeds are not deductible under our state law, I do not believe the law as presently written allows it. That is a matter for the legislature and not for this Court.

I vote to affirm the decision of the Court of Appeals.