IN THE MATTER OF: THE APPEAL OF MECKLENBURG COUNTY FROM THE GRANTING OF THE APPLICATION OF ELECTRIC POWER RESEARCH INSTITUTE, INC., FOR EXEMPTION BY THE MECKLENBURG COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1981

No. 8310PTC973

(Filed 19 June 1984)

**Taxation § 22.1— personal property owned by a scientific association—use by a contractor—exemption from ad valorem taxes**

Personal property was "wholly and exclusively used by its owner" for nonprofit scientific purposes and was thus exempt from ad valorem taxes under G.S. 105-278.7 where the property was owned by a scientific association

but was being used by a contractor hired by the association to conduct two research projects, and the substantial control exercised by the association over the property and the contractor shows that the contractor was acting as an agent of the association in its use of the property.

APPEAL by Electric Power Research Institute, Inc., from a Final Decision and Judgment of the North Carolina Property Tax Commission entered 14 April 1983. Heard in the Court of Appeals 6 June 1984.

This is an appeal by Electric Power Research Institute, Inc., from a denial by the North Carolina Property Tax Commission for exemption from ad valorem taxes on personal property in Mecklenburg County. Previously, the Mecklenburg County Board of Equalization and Review reversed the County Tax Supervisor's decision denying the application of Electric Power Research Institute for exemption. The Mecklenburg Board of County Commissioners appealed the decision to the North Carolina Property Tax Commission. That Commission, sitting as the State Board of Equalization and Review, heard the matter *de novo*, and reversed Mecklenburg County's Board of Equalization and Review.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by W. Samuel Woodard and Gary C. Ivey for the appellant.*

*Ruff, Bond, Cobb, Wade & McNair, by Hamlin L. Wade for the appellee.*

HILL, Judge.

Electric Power Research Institute, Inc. (hereinafter "EPRI") is a nonprofit corporation incorporated under the laws of the District of Columbia. It operates in several states, including North Carolina. Its members consist of electric utilities and cooperatives. EPRI engages in scientific research related to the power industry. It has been granted tax exempt status under Section 503(c)(3) of the Internal Revenue Code and prior to the bringing of this suit had been granted exemption from the North Carolina income tax and sales and use tax. EPRI had heretofore been granted exemption from ad valorem taxes outside of North Carolina.

In addressing Mecklenburg County's appeal, the North Carolina Property Tax Commission (hereinafter "Commission") heard

the matter *de novo*, and made the following pertinent findings of fact:

EPRI is engaged in two major research projects in Mecklenburg County. It leases a real estate facility in the University Research Park area near the University of North Carolina at Charlotte. EPRI is the owner of personal property having an ad valorem tax value of $767,607.00, which was located in the real estate facility.

On 1 February 1980 EPRI entered into a master agreement with J. A. Jones Applied Research Company (hereinafter "Jones"), a for-profit company, to perform two major research projects. The personal property in question is being used in connection with the performance of the two projects by Jones. One project is being supervised by Gary Dau, an employee of EPRI, who resides in California. Mr. Dau was at the Charlotte plant twenty-one days beginning 1 January 1982 through October, 1982, and it was anticipated that he would be at the plant an additional ten days through December, 1982. The other project was supervised by Joe Danko, an employee of EPRI, and he also lives in California. Mr. Danko was at the Charlotte plant twenty days from 1 January 1982 through October, 1982, and it was anticipated that he would be at the plant an additional six days through December, 1982. The number of days spent by each EPRI employee is representative of the number of days any successor might be at the plant. Both EPRI employees were present to supervise the respective projects in accordance with the master agreement. All other employees at the Charlotte location are employees of Jones, the number of such persons being about fifty.

EPRI has approximately 700 employees, including administrators and scientists, who plan and manage research primarily carried out through other organizations. Most of these employees reside in California. The results of EPRI's research are published and made available to utility companies and to the public.

Jones does not lease the personal property owned by EPRI. Nor does EPRI receive any rent or other income from Jones. EPRI pays to Jones its costs and a fee for its services under the master agreement.

Based upon its findings of fact and its rules of statutory construction, the Property Tax Commission concluded that G.S. 105-278.7(b)(1) does not allow the exemption of personal property owned by EPRI but used on a day to day basis by Jones. For the purpose of its decision the Commission assumed, but did not specifically reach, the conclusions of law that EPRI is a scientific association, that its personal property is used for nonprofit, scientific purposes, and that Jones is acting as agent or contractor for EPRI. Such conclusion effectively reversed the decision of the Mecklenburg County Board of Equalization and Review, thereby denying an exemption to EPRI for ad valorem taxes on its personal property.

The appeal presently pending is governed principally by the terms of G.S. 105-278.7 which provide in pertinent part as follows:

"(b) Personal property shall be exempted from taxation if wholly owned by an agency listed in subsection (c), below, and if:

(1) Wholly and exclusively used by its owner for nonprofit educational, scientific, literary, or charitable purposes; . . .

(c) The following agencies, when the other requirements of this section are met, may obtain property tax exemption under this section:

. . .

(4) A scientific association or institution.

. . .

(f) Within the meaning of this section:

. . .

(2) A scientific purpose is one that yields knowledge systematically through research, experimentation, or other work done in one or more of the natural sciences."

Although several assignments of error are brought forth, we believe the controlling question is what constitutes "exclusive use by the owner." The appellant EPRI contends that corporate entities are capable of acting only through agents, that is, pro-

moters, officers, directors, employers, independent contractors, trustees, bailees, or other authorized or implied agents. On the other hand, the appellee Commission argues that the statute plainly sets out that the subject property to be eligible for exemption must be "wholly and exclusively used by its owner for nonprofit purposes" through its employees only.

In construing a statute several basic tenets stand out. First, it is elementary that statutes are to be interpreted by giving words their "natural and ordinary meaning." *Borders v. Cline*, 212 N.C. 472, 193 S.E. 826 (1937). Also, it is abundantly clear in North Carolina that exemption statutes are construed strictly in favor of taxation and against exemption, although such statutes are not to be stintingly or narrowly construed. *Sale v. Johnson, Commissioner of Revenue*, 258 N.C. 749, 129 S.E. 2d 465 (1963); *Seminary, Inc., v. Wake County*, 251 N.C. 775, 112 S.E. 2d 528 (1960). Any ambiguity is resolved in favor of taxation. *In re Kapoor*, 303 N.C. 102, 277 S.E. 2d 403 (1981). The statute under which EPRI claims exemption, G.S. 105-278.7, establishes a three-prong test: (1) the property must be owned by a scientific association or institution; (2) the property must be wholly and exclusively used for scientific purposes; and (3) the property must be so used by its owner.

Our Supreme Court in *In re Forestry Foundation*, 296 N.C. 330, 250 S.E. 2d 236 (1979), addressed the issue of ad valorem tax exemption under the same statutory framework. Although the Court denied the tax exemption under facts non-assertive of an agency relationship, the decision focused on the purpose of the property's use and who had control over that use. In view of this decision, the rules of statutory construction, and the statutory test for exemption, we address the interpretation of the statute. In giving the words of the statute their natural and ordinary meaning, they must be applied to the facts of the case to which the statute is directed. There is no question as to ownership or purpose. EPRI is a scientific association and its personal property here is used for nonprofit, scientific purposes. Had the property been used by an employee of EPRI, the property would have been exempt from ad valorem taxation without question. But the property on a day to day basis was used by Jones, a contractor under the direction of EPRI. For the purposes of this appeal, therefore, the question before us in addressing what constitutes "wholly and

exclusively used by its owner" is whether the purpose to which the property is being used is ultimately controlled by EPRI.

A corporation (including an incorporated association) is an intangible being. Its existence is mirrored in its corporate charter, a creature of the law. Standing alone it can do nothing. Only through its personnel can it perform any function. Generally, a board of directors or board of trustees molds policy for the corporation. The officers — president, vice-president, secretary, treasurer — are responsible for carrying out policies through departmental managers or superintendents. These middle management personnel direct supervisors and employees who are actually responsible for the day to day performances, such as operating machinery and the like; yet it is the corporation itself that *uses* the equipment, even though many of its personnel and employees never see the machinery operated.

The definitions of "use" are limitless. The record, through the testimony of Mr. Darius, the treasurer of EPRI, reveals the method of operation of EPRI, i.e., the "use" of the property by its owner. His testimony in pertinent part is as follows:

EPRI selects the type of research products to be evaluated. In very few cases does it do the research. Mathematical studies are done in its office, but hardware development is done in the field. EPRI's scientists and engineers reside in the home office in California, but the company has operations and offices elsewhere. Research is carried out all across the country and in foreign territories. The results of the experiments are provided to the public and to utilities at token prices.

Four projects are carried on in North Carolina, the principal one being in Charlotte. The real estate facility was originally owned by EPRI, but for reasons beyond the control of EPRI it was sold to a third party and leased back to EPRI. The personal property was selected for the project, purchased by EPRI and placed in the facility at Charlotte. EPRI planned, defined and managed the work done in the facility. It selected Jones for on site operations. Jones was selected to keep the money raised and spent and also to keep activities separate. It served EPRI exclusively. A master agreement between EPRI and Jones was entered into under the terms of which Jones could be discharged if the non-destructive problems had been solved by 1982 or if Jones

was not doing a good job. A lean staff of EPRI people was on site from time to time so as not to duplicate facilities and technical competency, but it was expected that one or more permanent on site EPRI employees would be present as the facility expanded. EPRI pays a fee to Jones for its work and its actual costs.

EPRI controls the work at the Charlotte facility, and in so doing, controls employees of Jones in several ways. First, Jones reports to EPRI. EPRI uses controlled correspondence. Reports of technical nature are exchanged. Field audits are performed from time to time to make sure EPRI is getting dollar value.

Second, Jones performs tasks under EPRI's direction and control. Two representatives from California visit the Charlotte site twice a month. One of them is called the project manager. Both direct people at Jones to do certain things and carry out certain activities in connection with performance under the master agreement, including not only the formulation of the general plan but also detailed tasks. These tasks are monitored by telephone calls, correspondence, and visits to the facility.

Third, Jones maintains custody and care over EPRI's property and acts as the instrumentality for EPRI to use the property. The equipment on site and the subject of this controversy was acquired by EPRI under the terms of the master agreement for the performance of this project, and was shipped to the Charlotte facility by EPRI for educational purposes. EPRI does not lease the property or rent it to Jones. It receives no benefit or income from Jones for its use. EPRI controls the use of the property and determines what use to which it can be put. Jones does not use the property for any purpose other than that set out in the master agreement. All data generated by the facility belongs to EPRI. Insurance is carried and the premiums are paid by EPRI. It is the opinion of Mr. Darius that EPRI is bound by actions taken by Jones while it is using the equipment at the Charlotte facility.

In view of the substantial control exercised by EPRI over the property and Jones at the Mecklenburg facility, we hold that Jones was acting as agent for EPRI in its use of the personal property, and that EPRI controlled the ultimate purpose for which the property was used. We therefore conclude that the personal property was "wholly and exclusively used" by EPRI as its

owner and qualifies for exemption from ad valorem taxes under G.S. 105-278.7.

The decision of the North Carolina Property Tax Commission is reversed. The case is remanded to the Commission for entry of judgment in accordance herewith.

Reversed and remanded.

Judges BECTON and BRASWELL concur.