AARON ARONOV v. SECRETARY OF REVENUE, DEPARTMENT OF REVENUE, STATE OF NORTH CAROLINA

No. 8610SC971

(Filed 19 May 1987)

**Taxation § 1— income from another state—considered in disallowing N. C. loss carryover—unconstitutional**

The trial court properly reversed an assessment of income tax for 1978 which was based on consideration of the taxpayer's Alabama income to conclude that he had not had net losses in 1975-1977 and so to disallow North Carolina losses which he had attempted to carry forward. The Secretary of Revenue's interpretation of N.C.G.S. § 105-147(9)d 2 and 3 results in the indirect taxation of the taxpayer's Alabama income in violation of the due process clause of the Fourteenth Amendment of the U. S. Constitution and North Carolina's law of the land clause and exceeds statutory authority as espoused in the statute's general purpose clause.

APPEAL by Secretary of Revenue from *Bailey, Judge*. Order entered 29 May 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 2 March 1987.

*Kenneth G. Anderson, by Kenneth G. Anderson and James P. Stevens; and Hunter, Wharton & Howell, by John V. Hunter, III, for petitioner appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Newton G. Pritchett, Jr., for the Secretary of Revenue, Department of Revenue, State of North Carolina.*

BECTON, Judge.

Taxpayer, Aaron Aronov, filed a protest to his 1978 income tax assessment of $17,839.09. The assessment was sustained in a hearing before the Assistant Secretary of Revenue. Aronov appealed to the Tax Review Board, and the Board affirmed the Assistant Secretary's decision. Aronov paid a bond in the amount of the taxes and then petitioned for review in Wake County Superior Court where the Secretary of Revenue became a party. The trial court reversed the Tax Review Board's decision. The Secretary now appeals to this Court. We affirm.

I

Aaron Aronov, a resident of Alabama, was one of three partners in an unsuccessful business venture in North Carolina. The partnership's chief asset in this State was a shopping center known as "Freedom Mall." During its three years of operation the cumulative partnership losses from the operation of the shopping center were $983,901.61. The property was sold in lieu of foreclosure in 1978 for $100.00 plus the outstanding mortgage. After interest and other expenses totalling $28,590.70, the partnership reported $955,507.50 as gain in 1978. Aronov calculated his 1978 North Carolina income taxes as follows. He reported one-third of $955,507.50, or $257,987.03 as his distributive share of the gain from the sale of the shopping center. He deducted from this income a carryover loss of $257,987.03, his cumulative distributive share of the partnership's net operating losses for 1975, 1976 and 1977. By offsetting the gain from the sale of the shopping center with the losses carried forward for those three years, Aronov reflected no North Carolina net income on his personal North Carolina tax return for 1978.

During the three years for which Aronov carried over his losses, he derived substantial income from sources outside North

Carolina. None of that income was subject to North Carolina taxes.

The Secretary, however, applied Aronov's Alabama net income to the years 1975-1977 and determined that Aronov could not carry forward his losses from those years because, when considering his other income, he did not have net losses for any of those years. The Secretary concluded that Aronov had income of $257,987.03 in 1978, subject to taxes of $17,839.09. This assessment was sustained by the Assistant Secretary and the Tax Review Board.

The trial court reversed the Board's decision, finding that the decision of the Board and the Assistant Secretary result in the income taxation by the State of North Carolina of income earned by Aronov in other states and which had no connection with this State in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the commerce clause of the United States Constitution, and the law of the land clause of the North Carolina Constitution. Additionally, the trial court found that the Assistant Secretary's interpretation exceeded statutory authority and was arbitrary and capricious.

II

The Secretary's sole argument on appeal is that the trial court erred in reversing the Board because its conclusions of law were not supported by the evidence. Essentially, the Secretary contends that the trial court had no basis in law or fact for its finding that the Secretary's interpretation of N.C. Gen. Stat. Sections 105-147(9)d 2 and 3 (1985) resulted in the unlawful taxation of Aronov's Alabama income. We disagree.

A

N.C. Gen. Stat. Sections 105-147(9)d 2 and 3 provide in pertinent part that business "losses in the nature of net economic losses sustained in any or all of the five preceding income years . . ." may be carried forward. But "[t]he net economic loss for any year shall mean the amount by which allowable deductions for the year . . . and prior year losses *shall exceed income from all sources in the year including any income not taxable under this Division*" and "[a]ny net economic loss of a prior year or years brought forward and claimed as a deduction in any income year

may be deducted from taxable income of the year *only to the extent that such carry-over loss from the prior year or years shall exceed any income not taxable under this Division received in the same year in which the deduction is claimed. . . ."* (Emphasis added.) The Secretary maintains that the above language precludes Aronov from carrying forward his losses during 1975-1977 because his "income from all sources in [those years] including any income not taxable under [that] Division" exceeded his North Carolina losses. The income "from all sources" which prevented Aronov from having net losses in those years was income earned in Alabama.

North Carolina does not have the power to tax income of a nonresident earned outside North Carolina and which has no connection with this State. *See Frick v. Pennsylvania*, 268 U.S. 473, 69 L.Ed. 1058 (1925). Any attempt to do so offends the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 488-89, 69 L.Ed. at 1062. The Secretary argues, however, that her interpretation of Sections 105-147(9)d 2 and 3 does not result in taxation of non-North Carolina income, and that Aronov's income from other sources is used only to limit his entitlement to a deduction. She contends that "deductions are in the nature of exemptions; they are privileges, not matters of right, and are allowed as a matter of legislative grace," *citing Ward v. Clayton*, 5 N.C. App. 53, 167 S.E. 2d 808 (1969), *affirmed*, 276 N.C. 411, 172 S.E. 2d 531 (1970). The Court is mindful of this and the other longstanding legal postulates regarding statutory interpretation to which the Secretary made reference including the following: A taxpayer claiming a deduction must bring himself within the statutory provisions authorizing the deductions. 85 C.J.S., Taxation Sec. 1099, at 772 (1954). A statute providing exemption from taxation is strictly construed against the taxpayer and in favor of the State. *See Food House, Inc. v. Coble*, 289 N.C. 123, 221 S.E. 2d 297 (1976). Indeed, "the underlying premise when courts interpret taxing statutes is: 'Taxation is the rule; exemption the exception' [citation omitted]." *Broadwell Realty Corp. v. Coble*, 291 N.C. 608, 611, 231 S.E. 2d 656, 658 (1977). And in all tax cases, the construction placed upon the statute by the Commissioner (now Secretary) of Revenue, although not binding, will be given due consideration by a reviewing court. *See Campbell v. Currie*, 251 N.C. 329, 111 S.E. 2d 319 (1959). Notwithstanding the

above guidelines, if the Secretary's interpretation of G.S. Sections 105-147(9)d 2 and 3 has the effect of taxing Aronov's Alabama income, it exceeds both statutory and constitutional authority and cannot stand.

## B

Additionally, the Secretary contends that we are bound by the North Carolina Supreme Court's holding in *Dayton Rubber Co. v. Shaw*, 244 N.C. 170, 92 S.E. 2d 799 (1956) in which the court upheld the Commissioner's interpretation of N.C. Gen. Stat. Sec. 105-147(6) (the predecessor to Section 105-147(9)d 2). In *Dayton Rubber* the Supreme Court upheld the Commissioner's reduction of the foreign corporate taxpayer's carryover losses by applying royalty payments from out of state that were not connected with its North Carolina operations. However, contrary to the Secretary's assertion, the court did not address the question whether, by limiting the deduction, the Commissioner was in effect taxing non-North Carolina income. Indeed in a later case, *Dayco Corporation v. Clayton*, 269 N.C. 490, 153 S.E. 2d 28 (1967), the Supreme Court specifically left that question open, stating at the outset that "[t]he plaintiff does not contend that the assessment in question has the effect of the levy of a tax on income which is beyond the constitutional power of the State to tax." *Id.* at 494, 153 S.E. 2d at 30-31. Thus we must decide whether the use of non-North Carolina income to reduce the nonresident taxpayer's carryover losses is an indirect attempt to tax income not taxable by this State.

## C

A number of United States Supreme Court and federal court cases have addressed the question of indirect taxation under analogous tax schemes. For example, the United States Supreme Court upheld a New Jersey tax statute that permitted the State to subject a nonresident decedent's estate to an inheritance tax at a rate which had the same ratio to the entire tax as the New Jersey property had to the entire estate. *Maxwell v. Bugbee*, 250 U.S. 525, 63 L.Ed. 1124 (1919). However, six years later in *Frick v. Pennsylvania*, 268 U.S. 473 (1925), the Court struck down a Pennsylvania tax statute that permitted the State to set the inheritance tax rate for the portion of the decedent's estate that was in Pennsylvania based on the entire estate, which included

property outside Pennsylvania. The Court reasoned that the plaintiff's tax liability was the same as if the State had taxed that which it did not have the power to tax.

The United States Court of Appeals for the Tenth Circuit upheld a Kansas statute which permitted the State to combine a nonresident service member's military income with his Kansas income to set the rate at which the Kansas income was to be taxed. *U.S. v. Kansas*, 810 F. 2d 935 (10th Cir. 1987). The court, applying the rationale of the Supreme Court in *Maxwell v. Bugbee*, stated that "the inclusion in a state taxing scheme of property not subject to direct taxation by the state, for the purpose of determining the rate of taxation to be applied to property that is subject to the state's taxing powers, does not violate the due process clause of the Fourteenth Amendment. [Citations omitted]."

The taxing schemes are varied and the results are difficult to reconcile. Some courts, like the Tenth Circuit in *United States v. Kansas*, have adapted the rationale of *Maxwell v. Bugbee* to various tax schemes which use out of state property to set the rate of taxation. *See Wheeler v. State*, 127 Vt. 361, 249 A. 2d 887, *appeal dismissed*, 396 U.S. 4, 24 L.Ed. 2d 4 (1969); *McCutchan v. Oklahoma Tax Commission*, 191 Okla. 578, 132 P. 2d 337 (1942). In the case *sub judice*, however, the rate of taxation does not vary. Instead, Aronov's Alabama income is used to determine whether he even has income subject to taxation in North Carolina. Thus, we are more persuaded by the Supreme Court's reasoning in *Frick*. There the *effect* of the State's taxing scheme is the primary concern.

When the effect of the statute is to make the taxpayer's tax liability the same as it would have been had the state included income it did not have the power to tax, then the scheme must fall. In the case at bar, Aronov would have no North Carolina tax liability in 1978 were it not for the fact that he had net income in Alabama during 1975, 1976 and 1977. Consequently, under the Secretary's interpretation of Sections 105-147(9)d 2 and 3, his 1978 tax liability is what it would have been had his Alabama gains during the three preceding years been North Carolina gains. The result is a sophisticated scheme which taxes, belatedly, the nonresident taxpayer's non-North Carolina income. The Secretary's interpretation of Sections 105-147(9)d 2 and 3 therefore violates

the due process clause of the Fourteenth Amendment and the law of the land clause of the North Carolina Constitution.

### III

Additionally, the Secretary's imposition of an indirect tax on the nonresident taxpayer's Alabama income contravenes legislative intent to tax only the North Carolina income of nonresident taxpayers. The legislature's intent is specifically outlined in the "Purpose" section of Division II which provides:

> The general purpose of this Division is to impose a tax for the use of the State government upon the net income in excess of the exemptions herein allowed collectible annually:
>
> . . .
>
> (2) Of every nonresident individual deriving income from North Carolina sources attributable to the ownership of any interest in real or tangible personal property in this State or deriving income from a business, trade, profession or occupation carried on in this State. [Citation omitted.]

N.C. Gen. Stat. Sec. 105-134 (1985). This Court will not follow an administrative interpretation which is in direct conflict with the clear intent and purpose of the statute under consideration. *See Watson Industries v. Shaw*, 235 N.C. 203, 69 S.E. 2d 505 (1952).

### IV

We hold that the Secretary's interpretation of Sections 105-147(9)d 2 and 3 results in the indirect taxation of Aronov's Alabama income in violation of the due process clause of the Fourteenth Amendment of the United States Constitution and North Carolina's law of the land clause and exceeds statutory authority as espoused in the statute's general purpose clause. We need not reach the question whether the Secretary's interpretation violates the commerce clause of the United States Constitution.

Judgment is affirmed.

Chief Judge HEDRICK and Judge WELLS concur.